Christopher Jensen, Esquire
(State Bar No. 003581)
**JENSEN LAW FIRM, P.C.**
711 Whipple Street, Suite D
Prescott, AZ  86301-1717
Telephone:  (928) 778-2660
E-Mail: info@jensenlawfirm.com
Attorneys for Plaintiff Betty Jane Foster

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Betty Jane Foster, a married woman,** | ) |
| | ) CAUSE NO. CV 09-8161-PCT-PGR |
| **Plaintiff,** | ) |
| | ) **RESPONSE TO MOTION TO DISMISS** |
| vs. | ) **COUNTS 1-5 OF PLAINTIFF'S AMENDED** |
| | ) **COMPLAINT, PURSUANT TO** |
| **Zurich American Insurance Company, a** | ) **FED.R.CIV.P. 12(B)(6), FOR FAILURE TO** |
| **foreign corporation,** *et al.,* | ) **STATE A CLAIM UPON WHICH RELIEF** |
| | ) **MAY BE GRANTED** |
| **Defendants.** | ) |

Plaintiff Betty Jane Foster ("Foster"), through her undersigned counsel, hereby responds in opposition to Defendants' Motion to Dismiss Counts 1-5 of Plaintiff's Amended Complaint, pursuant to Fed.R.Civ.P. 12(B)(6), for Failure to State a Claim Upon Which Relief May Be Granted ("Motion to Dismiss"), as set forth in the Memorandum of Points and Authorities below.

MEMORANDUM OF POINTS AND AUTHORITIES

A. <u>Background and Foster's Amended Complaint</u>.  Foster concedes that her claims in this action arise, directly and/or indirectly, from  an incident that occurred on August 16, 2007, in which Foster suffered injuries while on the property of the Cliff Castle Casino ("Casino") aka Yavapai-Apache Nation ("Nation"), after she was ejected from a golf cart being driven from the parking lot to the entrance to the casino by "John Doe Driver" aka "John Doe (golf cart driver)," now identified as Kenneth David Thurman ("Thurman"), a "white" resident of Cottonwood, Arizona.  Foster concedes that the Casino is wholly located within, and owned and operated by,

-1-

the sovereign Yavapai-Apache Nation on its reservation.  Foster denies that Tribal Court has exclusive jurisdiction over her claims against the Thurman, but concedes that Tribal Court has exclusive jurisdiction over her claims against the Casino aka the Nation.

Foster further admits that the Yavapai-Apache Nation has enacted the "Yavapai-Apache Nation Tort Ordinance for Gaming Patrons," which requires a Notice of Claim within 90 days after the claim first occurs (as alleged in Amended Civil Complaint at Paragraph 22, pursuant to Exhibit C to the Motion to Dismiss).  Foster further admits that the time limit for filing suit is either:

1. Within sixty (60) days after giving the Notice of Claim pursuant to the "Yavapai-Apache Nation Tort Ordinance for Gaming Patrons," at Section 9, as indicated by Exhibit C to Amended Civil Complaint, attached to the Motion to Dismiss, or
2. One Hundred Eighty (180) days after the cause of action accrues, pursuant to Section 6(A), Resolution No. 14-96, cited by the Yavapai-Apache Nation in the Yavapai-Apache Nation's Motion to Dismiss, Exhibit 2 hereto, at Pages 2-3.

Foster points out the Nation's conflicting statute of limitation deadlines in order to illustrate that asserting a tort claim in the Yavapai-Apache Nation is fraught with problems due to inherent procedural inconsistencies and omissions in tribal law.

Foster relies upon the Affidavit of Betty Jane Foster (hereinafter "Affidavit"), Exhibit 1 hereto, which is incorporated into Foster's proposed Second Amended Complaint.  As explained in the Affidavit, the April 4, 2008 letter of Jani Lehane ("Lehane") containing false information about the actual statute of limitations for purposes of Foster's claim against the Casino/Nation (indicating the statute of limitations period was two years from the date of the August 16, 2007 accident) was simply one of a series of communications initiated by Lehane.  Lehane repeatedly indicated to Foster that settlement negotiations as to Foster's injury claims would be ongoing beyond the actual (undisclosed) Notice of Claim and/or statute of limitation deadlines,[1] because

///

---

[1] Foster's Affidavit, Ex. 1, para. 26, states that for "more than a year after the August 16, 2007 incident, I continued to have [settlement discussions with Lehane] and she never led me to believe that there were any impending deadlines relating to my incident injury claim."

Lehane told Foster that there could be no settlement until future documentation as to Foster's medical expenses and injuries was provided to Lehane. Foster's ongoing treatment (with increasing medical records and bills relating to a knee replacement) caused delay in the settlement process.  Reliance upon Lehane's promise of ongoing settlement negotiations, as well as Lehane's misrepresentation as to the statute of limitations, caused Foster to delay in consulting with an attorney until after the Notice of Claim and statute of limitations deadlines expired.  *See* Ex. 1.

In Tribal Court, Foster seeks to use the doctrine of estoppel to prevent the application of any defense relating to the Notice of Claim and statute of limitations deadlines.  These defenses are pending as this time pursuant to the Motion to Dismiss of the Cliff Castle Casino aka Yavapai-Apache Nation, Ex. 2.  Foster requests that the determination of any issue relating to the Notice of Claim or statute of limitations deadlines be stayed until the Tribal Court rules on the Motion to Dismiss of the Yavapai-Apache Nation, because such ruling may make the current civil action before this Court moot, causing Foster to voluntarily dismiss this action.

B. <u>Chronology of Important Dates</u>.  The important dates, consistent with Exhibit 1, the Affidavit of Betty Jane Foster, attached, plus other portions of the record before this Court, are:

| | |
|---|---|
| August 16, 2007 | Alleged accident occurs on Yavapai-Apache Nation property, causing injury to Betty Jane Foster. Amended Civil Complaint |
| Approx. September 16, 2007 | First contact initiated by Defendant Zurich American Insurance Company employee, Jani Lehane, to Betty Jane Foster regarding potential settlement of injury claim. Exhibit 1, Affidavit of Betty Jane Foster at ¶ 11. |
| Approx. October 16, 2007 | Defendant Jani Lehane and Betty Jane Foster discuss the status of ongoing treatment, Betty Jane Foster promises to send a complete copy of incident medical records once treatment is complete, and Jani Lehane agrees to wait for treatment records and bills.  Exhibit 1, Affidavit of Betty Jane Foster at ¶ 12. |
| Approx. October 16, 2007 – January 16, 2007 | Betty Jane Foster and Jani Lehane exchange letters and/or phone calls primarily regarding updated information as to Betty Jane Foster's medical care, treatment, and expenses. Exhibit 1, Affidavit of Betty Jane Foster at ¶ 13. |

| | |
|---|---|
| November 14, 2007 | Yavapai-Apache Nation Notice of Claim deadline, arguably.[2] |
| January 13, 2008, or February 12, 2008 | Deadline for Foster to file suit in the Tribal Court (or later, depending upon date of accrual of her cause of action due to uncertainty as to the nature, extent, and duration of her damages, which is a fact question for a jury to determine consistent with Fn. 1 above. |
| April 4, 2008 | Betty Jane Foster receives a letter from Jani Lehane stating that she can rely upon a two year statute of limitations in the state of Arizona, which Betty Jane Foster relies upon to her detriment. Exhibit 1, Affidavit of Betty Jane Foster at ¶17. |
| October 8, 2008 | Betty Jane Foster retains legal counsel after concluding that the settlement process "was taking too long." Exhibit 1, Affidavit of Betty Jane Foster at ¶ 19 |
| February 25, 2009 | Betty Jane Foster, through counsel, submits a "demand package" to Jani Lehane, per her request. Source: Amended Complaint at ¶ 24. |
| June 9, 2009 | After many requests, counsel for Betty Jane Foster receives a faxed copy of an April 21, 2009 letter of Jani Lehane indicating that no offers would be made due to failure to comply with the Notice of Claim requirement. Amended Complaint at ¶ 25. |
| June 15, 2009 | Plaintiff files a Notice of Claim with the Yavapai-Apache Nation, asserting that estoppel created by Jani Lehane's false information and ongoing settlement negotiations prevents the Notice of Claim and statute of limitations defenses. |
| August 13, 2009 | The Nation responds to the Notice of Claim by stating that Zurich is handling the matter. Amended Complaint at ¶ 31. |

---

[2] The Notice of Claim requirement indicates, pursuant to Section 4 of the "Yavapai-Apache Nation Tort Ordinance for Gaming Patrons," that the claim for damages for personal injury "alleged to have been suffered on the Gaming premises will be forever barred unless written notice of the time, place, and cause of injury and/or damage is given to the Nation [within] ninety (90) days after the claim first accrues." It is Foster's position that the Yavapai-Apache Nation already had the available "notice of the time, place, and cause of injury" information as of the date of the accident, due to its own internal investigation which created an "incident report" and/or "accident report." Due to uncertainty as to the full nature, extent, and duration of Foster's damages, with ongoing treatment and increasing medical expenses, the accrual of the cause of action did not occur until after said ninety (90) day period following the date of the accident had expired, which is at minimum a fact issue for a jury to determine. *Doe v. Roe*, 191 Ariz. 313, 323, 955 P.2d 951, 961 (1998) (*citing Gust, Rosenfield & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 591, 898 P.2d 964, 969 (1995) ("The jury must determine at what point Plaintiff's knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.").

| | |
|---|---|
| August 17, 2009 | Filing of Foster's Complaints in both Tribal Court and the Yavapai County Superior Court (on a Monday, therefore, within the two year statute of limitation period asserted by Jani Lehane in her April 4, 2008 letter to Foster). |

C. <u>Legal Analysis</u>.

<u>Preface:  Notice of Claim and Statute of Limitations Violations as Defenses.</u>  Defendants Zurich and Lehane claim to avoid liability by asserting that they "owed no legal duty to Foster regarding Lehane's obligation to give Notice of Claim" ("NOC") or statute of limitations ("SOL") information because both deadlines had already passed[3] prior to the date of the April 4, 2008 letter from Lehane.  In addition to the fact question as to when Foster's claim actually first accrues based upon when the true nature, extent, etc. of Foster's damages became known, the ongoing settlement negotiations initiated by Lehane with Foster only a month or so after the August 16, 2007 accident create issues of estoppel which, if found by a trier of fact, prevent the requested dismissal.

As indicated in Exhibit 1, the Affidavit of Betty Jane Foster, Lehane's ongoing negotiation promises plus the false SOL information induced Foster to continue negotiations and delay in seeking the advice of legal counsel until after the NOC and SOL deadlines, resulting in estoppel which prevents the requested dismissal.  As stated in *Berry v. Robotka*, 9 Ariz. App. 461, 467, 453 P.2d 972, 978 (Ariz. 1969):

> Reliance exists in the mind of the relier, and, ordinarily a party's affidavit in simple, conclusory terms that he relied upon the misrepresentation alleged would be sufficient to withstand a motion for summary judgment.

Foster's Affidavit here, at Ex. 1, thus prevents dismissal for the same reason.

Jani Lehane's telephone calls and several letters, including but not limited to the April 4, 2008 letter falsely stating that Foster could rely upon a two year statute of limitations, omitting mention of the NOC and various phone discussions including Lehane's promise that ongoing

---

[3]  Disputed, because the date from which the notice of claim and statute of limitations deadlines are measured depends upon when the cause of action actually accrued, which is a fact question.  *Doe v. Roe*, 191 Ariz. 313, 323, 955 P.2d 951, 961 (1998) (*citing Gust, Rosenfield & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 591, 898 P.2d 964, 969

negotiations would lead to settlement of Foster's injury claim so long as it was fully documented to Lehane within the two year SOL period, induced Foster to rely, to her detriment, on Lehane's representations by waiting to seek legal counsel. Defendants are estopped from asserting otherwise, subject to the determination of a trier of fact on the estoppel issue. This prevents the requested dismissal.

      1. <u>The Count One Negligent Misrepresentation Cause of Action is Valid</u>. In order to prove a claim for negligent misrepresentation, Foster must prove: (1) Jani Lehane and/or Zurich, in the course of business, gave incorrect information for the guidance of others in their business transaction; (2) Jani Lehane and/or Zurich could reasonably foresee that Betty Jane Foster would rely on that information; (3) Jani Lehane and/or Zurich failed to exercise reasonable care in obtaining or communicating that information to Betty Jane Foster; (4) Betty Jane Foster relied on that incorrect information; (5) Betty Jane Foster's reliance was justified; and (6) Betty Jane Foster's reliance was a cause of her damages. *See Taeger v. Catholic Family and Community Services,* 995 P.2d 721 (Ariz. App. 1999). Foster's Amended Complaint directly mirrors the elements of this claim, *see* Amended Complaint allegations at ¶¶ 36-43, and therefore, taken as true for purposes of this Court's Rule 12(b)(6) inquiry, the Motion to Dismiss must fail.

      As stated in the Motion to Dismiss at Pages 5-6, "the tort of negligent misrepresentation is defined by Restatement (2nd) of Torts, Section 552, titled "information negligently supplied for the guidance of others," states:

> (1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered (a) by the person [for] whose benefit and guidance he intends to supply the information . . .; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends . . .

---

(1995) ("The jury must determine at what point Plaintiff's knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.").

-6-

1   Clearly, allegations that Jani Lehane, in the course of her employment with Zurich, supplied false
2   information to guide Foster in connection with her business transaction (how and when to settle or
3   sue on her personal injury claim).  Lehane failed to "exercise reasonable care or competence in
4   obtaining or communicating the information" as evidenced by the false information Lehane
5   supplied to Foster in her April 4, 2008 letter as to SOL plus Lehane's phone statement(s) to Foster
6   that the ongoing settlement negotiations would lead to a resolution of her claim within the claimed
7   statute of limitations period of two years.[4]

8         2.  <u>The Count Two Fraudulent Misrepresentation Cause of Action is Valid.</u>  Defendants
9   correctly state the nine elements of fraudulent misrepresentation under Arizona law which are each
10  clearly alleged in the Amended Complaint at paragraphs 44-58.  With each allegation taken as
11  true, the Motion to Dismiss must fail.

12        Defendants incorrectly attempt to limit the false representations to conduct or actions of
13  Lehane <u>after</u> the running of the notice of claim and/or statute of limitation requirements.
14  Defendants claim these false representations "clearly w[ere] not relied upon by Foster as an
15  inducement to forbear either of her filing obligations."  As stated in the Affidavit of Betty Jane
16  Foster, ongoing settlement negotiations <u>both before and after the running of any notice of filing or
17  statute of limitation requirement were relied upon</u> "as the appropriate means to preserve my
18  incident injury claims because [Foster] believed, and had no reason to disbelieve, that the ongoing
19  negotiation were intended to and would lead to a reasonable settlement of my incident injury
20  claims."  Exhibit 1, Affidavit of Betty Jane Foster at ¶ 16.  Consistent with the Affidavit of Betty
21  Jane Foster, the allegations as to the ongoing settlement negotiations between Jani Lehane and
22  Betty Jane Foster are clarified and amplified in the proposed Second Amended Complaint.

---

[4] Aside from going beyond the bounds of a motion to dismiss, Defendants' duty argument that "Zurich and Lehane owned no legal duty to Plaintiff" is unavailing in light of the plain language of the Restatement that one who supplies information must do so with reasonable care and competence.  It is undisputed that Lehane supplied Foster with misinformation as to the ongoing settlement process, omitted information on the Notice of Claim, and supplied false information as to the statute of limitations.  Even the case cited by Defendants, *St. Joseph's Hospital v. Reserve Life Ins. Co.*, 154 Ariz. 303, 305 (App. 1986) acknowledges that "the only duty owed by [Defendant] was to give true information . . . . "

3. <u>The Count Three Cause of Action for Breach of Duty to Third Party Claimants to Act with Reasonable Care and to Act Honestly and Fairly is Valid.</u>  The Motion to Dismiss, at Pages 7-10, correctly cites *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007), for the elements of a claim of negligence in Arizona:  (1) a duty requiring the defendant to conform to a certain standard of care, (2) a breach by the defendant of that standard, (3) a causal connection between the defendant's conduct and the resulting injury, and (4) actual damages.  Defendants assert that there was <u>no duty</u> to act with reasonable care and to act honestly and fairly in this case, due to the lack of a contractual relationship between Foster and any defendant.

<u>Preface: Authorities Cited By Defendants Regarding to "No Duty" Argument Require A Contract Which Does Not Exist Here, So Authorities Cited are Inapplicable.</u> A number of Courts have held that adjusters and agents may be held liable for their bad faith in processing, settling, or denying an insurance claim without privity of contract.  *Scott Wetzell Servs., Inc. v. Johnson*, 821 P.2d 804, 812, N. 10 (Coll. 1991) (independent claims adjuster "had a duty of good faith and fair dealing," "not significant whether the claims adjusting service is an independent contractor or an agent of the [self-insured] employer," *Jordan v. City of Aurora*, 876 P.2d 38, 44 (Colo. App. 1994) (holding that a cause of action against an independent insurance adjuster in the absence of a contractual relationship existed); *Wm. H. McGee & Co. v. J.H. Schick*, 792 S.W. 2d 513, 521 (Tex. App. 1990) (managing agent entity held liable "because of the 'special relationship' between McKee and Schick which was 'governed or created' by the insurance contract, McGee owed Schick a duty of good faith and fair dealing").

The issue in *Leal v. Allstate Ins. Co.*, 199 Ariz. 250, 252, 17 P.3d 95, 97, Paragraphs 9-10 (App. 2000) was whether a motorist injured in a collision, as a third party, could sue the tort feasor's insurer for bad faith in the settlement of his claim:  this is distinguishable from at least the

-8-

portion of the cause of action alleged in Count 3 of Foster's Amended Complaint relating to failure to act honestly and fairly, as discussed below. *Leal* does hold that a bad faith cause of action requires an underlying contractual relationship. Here, the cause of action is for negligence involving a "special relationship," not bad faith, so *Leal's* contract requirement does not apply.

a. Lehane's Duty of Reasonable Care to Third Party Claimant Arising from "Special Relationship." As to the negligence cause of action alleged in Count Three (which is in addition to the alleged duty to act fairly and honestly), Foster admits that she had no contract with Defendants Zurich and Lehane. Foster asserts instead that Lehane had a duty to act with reasonable care during her settlement negotiations with Foster. This results from a "special relationship" created by the ongoing negotiations initiated by Lehane seeking claim settlement with Foster. Lehane was acting as an insurance claims professional and employee for Defendant Zurich American Insurance Company, acting for and on behalf of the insured, Cliff Castle Casino aka Yavapai-Apache Nation, the party claimed by Foster to be liable. A "special relationship" between insurance claims professional Lehane and the less knowledgeable (more vulnerable) claimant Foster results from these facts and establishes Lehane's duty to act with reasonable care, which substitutes for any contractual relationship that might otherwise be required.

Lehane's and Foster's ongoing settlement negotiations created a "special relationship" between the parties because Lehane took affirmative actions to advise Foster as to the settlement process and deadlines, creating a duty to act with reasonable care. Foster acknowledges that generally an insurer does not initially owe a duty of care to an injured third-party claimant. However, no case cited by Defendants deals with similar facts whereby an insurer took affirmative action to provide advice and then disavowed said negligent advice to the third-party's detriment.

Arizona law, citing Restatement (Second) of Torts § 314A,[5] has acknowledged that taking affirmative action with regard to another who is vulnerable can create a "special relationship." *See DeMontiney v. Desert Manor Conv. Center*, 144 Ariz.6, 695 P.2d 255 (1985). As discussed in *St.

---

[5] Restatement (Second) of Torts § 314A provides several examples of situations where a "special relationship" exists creating an affirmative duty to aid another such as, innkeepers, common carriers, possessors of land, and/or custodial

*Joseph's Hospital*,[6] individuals giving information intended for the guidance of others must "exercise reasonable care or competence in obtaining or communicating the information." *Id*. at 806. In light of the strong preference to have a matter decided on its merits, Foster respectfully requests a denial of the Motion to Dismiss as to Count Three's negligence allegations due to the "special relationship" that Lehane affirmatively created with claimant Foster by providing advice as to the SOL and promises as to the opportunity to settle once future medical treatment and expenses were documented. *See* Ex. 1.

  b. Lehane (and Zurich) Had a Duty to Truthfully Communicate Information to Foster. In *St. Joseph's Hospital*, an insurance company verified the issuance of a health insurance policy and its policy limits to a treating hospital. Thereafter, the insurance company denied all claims relating to the hospital's treatment due to fraud associated with the insurance application as to the patient's pre-existing conditions. Although the hospital and insurer were not contracting parties, the Court states: "**the only duty by [the insurer] was to give true information of existing facts known to it in response to the request**." [Emphasis added] Jani Lehane had the same duty in her settlement negotiations with Foster to "give true information."

  For Lehane to give <u>false</u> information while conducting ongoing settlement negotiations with Foster (both before and after the running of any NOC or SOL deadlines) breaches this fundamental duty insurers have in seeking settlement: to "give true information." For Lehane and Zurich to seek to avoid liability for affirmatively providing materially false and misleading information upon which Foster relied to her detriment by using lack of privity of contract as a defense is contrary to the basic purpose of tort law: to hold the wrongdoer responsible for the harm she causes. There is a duty "to give true information," it was undeniably breached by Lehane's

---

relationships. Plaintiffs argue that Lehane's position of superior knowledge compared to Foster coupled with the ongoing settlement negotiations plus the promise of future settlement constitutes a "special relationship."
[6] *St. Joseph's Hosp. v. Reserve Life Ins. Co.*, 742 P.2d 804, 806-807 (Ariz. App. 1986).

April 4, 2008 letter advising of a two year SOL, and denial of such a duty to give true information mocks the concept of justice. Dismissal for lack of duty or contract is improper under these facts.

  4. <u>Count 4 of Foster's Amended Civil Complaint: Estoppel</u>.  Defendants acknowledge that "equitable considerations may estop a defendant from claiming the protections afforded by a limitations statute." *Nolde v. Frankie*, 192 Ariz. 276, 280, 964 P.2d 477, 481 (1998).  Defendants indicate, as to estoppel by inducement (which is not the only estoppel theory asserted by Foster), four factors must be established:

> 1.  Foster must identify specific promises, threats, or inducements by the Defendant(s) that prevented filing suit;
>
> 2.  Estoppel by inducement precludes the limitation defense only if Defendant's promises, threats or inducements actually induced Plaintiff to forebear filing suit;
> 3.  This estoppel doctrine only applies if Defendant's conduct *reasonably* causes Foster to forebear filing a timely action; and
>
> 4.  Foster must file suit within a reasonable time after termination of the conduct warranting estoppel.

Although Defendants claim "none of the four factors are present," a review of the Amended Complaint establishes that all four of these factors were properly alleged as part of Foster's allegations. *See* Amended Complaint, para. 69-76.  In addition, the Affidavit of Betty Jane Foster, incorporated into Plaintiff's proposed Second Amended Complaint, specifies and clarifies her allegations relating to estoppel.  As to the merits of Foster's claims, these are fact issues for the trier of fact to determine as to whether estoppel by inducement, or any other form of estoppel, prevents the Notice of Claim and statute of limitations defenses. *See Hauskins v. McGillicuddy,* 175 Ariz. 42 852 P.2d 1226 (Ariz. App. 1992) (Issues of fact such as excusable neglect generally are matters properly left for a jury and not to be resolved by a judge.); *see also Pritchard v. State*, 163 Ariz. at 433 ("disputed issues of fact must be resolved by the jury, not the trial court.  Like reasonable diligence in the context of tolling a statute of limitations, excusable neglect often presents material issues of fact not cognizable on a motion to dismiss."). No dismissal is proper due to estoppel fact issues which require determination by a trier of fact after presentation of evidence.

1        5. <u>Count 5 of Amended Civil Complaint:  Negligent Training and/or Supervision of Jani Lehane by Zurich</u>.  As indicated by Defendants in their Motion to Dismiss, this claim for dismissal follows the same analysis as with Count 3 above (for breach of duty to act with reasonable care and to act honestly and fairly).  *See* Count Three analysis, *supra*.

        6. <u>Count Six-Direct Cause of Action Against John Doe Driver, aka Kenneth David Thurman, is Not Sought to be Dismissed</u>.  By omitting mention of the direct cause of action for negligence in driving by John Doe Driver on August 16, 2007, Defendants apparently acknowledge that this is a valid cause of action not subject to dismissal.  Such acknowledgement is inconsistent with Defendants' position in the Notice of Remand that John Doe Driver, aka Kenneth David Thurman, was fraudulently joined in this matter.

## CONCLUSION

Motions to Dismiss for failure to state a claim upon which relief can be granted are not favored in Arizona.  *Folk v. City of Phoenix*, 27 Ariz. App. 146, 151, 551 P.2d 595, 600 (1976); *Acker v. CSO Chevira*, 188 Ariz. 252, 934 P.2d 816 (App. 1997).  "A court should not grant such a motion unless it appears certain that the plaintiff would not be entitled to relief under any state of facts susceptible of proof under the claim stated."  *Id.*  (Citations omitted).  In our review of a Motion to Dismiss, we must accept all material facts alleged by the non-moving party as true.  [Citation omitted].  Before a Rule 12(b)(6) Motion to Dismiss is granted, the non-moving party should be given an opportunity to amend the Complaint if such an amendment will cure its defects.  [Citations omitted].  *Acker*, 934 P.2d at 820.  *See also Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (""Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the Complaint could not be saved by any amendment."); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (On exercising its discretion with regard to a request to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities.")

Plaintiff Foster should be given leave to amend her Complaint to indicate the true name of "John Doe Driver" and to assert the facts contained in Exhibit 1, Affidavit of Betty Jane Foster, prior to any dismissal of the Amended Civil Complaint herein, as a result of the foregoing.

Dismissal should be denied because Counts One, Two, Three, Four and Five all state causes of action under Arizona law upon which relief can be granted, based upon the allegations pending.

Respectfully submitted this 19th day of October, 2009.

**JENSEN LAW FIRM, P.C.**

By: /s/ Christopher Jensen
Christopher Jensen
Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Steven G. Mesaros, Esq.
Renaud Cook Drury Mesaros, PA
One N. Central Avenue, Suite 900
Phoenix, AZ 85004


/s/ Gloria Lorntzen

-13-